**Truman E. HARRIS, Administrator of the Estate of Christine E. Harris, Plaintiff below, Appellant,**

v.

**Phyllis D. GALLAHER, M. D., Defendant below, Appellee.**

Supreme Court of Delaware.

Submitted May 13, 1977.

Decided June 21, 1977.

C. Waggaman Berl, Jr., Wilmington, for plaintiff below, appellant.

Jane R. Roth, Richards, Layton & Finger, Wilmington, for defendant below, appellee.

Before DUFFY, Justice, MARVEL, Chancellor, and BROWN, Vice Chancellor.

DUFFY, Justice:

In this action based on allegations of medical malpractice, plaintiff appeals from an order of the Superior Court awarding summary judgment to defendant. We reverse.

I

Christine E. Harris was a patient of defendant-doctor, a gynecologist, from the mid-1960s through 1971. In August 1969, while Mrs. Harris was hospitalized (for surgery not related to the present claim), she was informed by a resident doctor at the Wilmington Medical Center that she had a small lump on her left breast. Mrs. Harris consulted defendant who noted the lump and advised her, in October 1969, to consult a surgeon and to follow his instructions.

Thereafter, Mrs. Harris was examined by a surgeon who advised that the lump should be biopsied; however, for reasons not explained in the record, a biopsy was not performed.[1]

After meeting with the surgeon, Mrs. Harris had a series of contacts with defendant for treatment of specific gynecological ailments. Those contacts (which began in December 1970) were both in person and by telephone, and continued until August 1971. None of them was for treatment of the breast lump. In March 1972 Mrs. Harris was informed by another physician that she had inoperable cancer of the left breast. She died of cancer in April 1974.[2]

After reviewing affidavits filed by the parties, the Superior Court concluded that any "weight" to be accorded an affidavit[3] of Dr. Robert W. Frelick filed by plaintiff was "undermined" by his later affidavit and then determined that there was not a dispute of material fact; judgment was given accordingly for defendant.

II

For present purposes, at least, it appears to be undisputed that defendant was not qualified to biopsy the lump on Mrs. Harris' breast and that, in accordance with acceptable medical practice, she referred her to a surgeon for that purpose. The significant period of contacts on which plaintiff relies began some two months after that referral; the contacts or consultations by Mrs. Harris with defendant were for medical assistance within the latter's specialty. Defendant caused Mrs. Harris to be hospitalized on April 6, 1971 for a surgical procedure ("D & C") which defendant performed.[4] What occurred thereafter is critical on the summary judgment issue.

The deposition of Mrs. Harris was taken on May 11, 1973, and she testified therein as follows:

"Q. All right, Did anything unusual happen after you had your D & C?

A. Well, when I went back to Dr. Gallaher, for my post operative check, I mentioned to her about this mass in my breast. I said to Dr. Gallaher, I said: I believe this knot, in my breast, is getting larger. And she says, to me: No, I don't think so. She said: I don't think you have anything to worry about. Well, I didn't, I forgot about it and that is the God's in heavens truth. Those are her words."

---

1. In this action we are not concerned with the legal relationship between Mrs. Harris and the surgeon. We consider only the claim made against Dr. Gallaher.

2. This action was filed by Mrs. Harris' husband for himself and as Administrator of her Estate.

3. Dr. Frelick's first affidavit can be read, as the Superior Court noted, as implying a want of due care on defendant's part.

4. While Mrs. Harris was hospitalized another doctor examined her and noted on her chart: "*Breasts*: No masses."

Defendant denies that that conversation ever took place. Whether it did or not is thus an issue of fact and clearly, in our judgment, it is material.

 Fairly read, Dr. Frelick's first affidavit makes plain that, under the prevailing standard of care, defendant had a duty to "evaluate the lump" when it was admittedly (for present purposes, at least) first called to her attention. And that meant to refer Mrs. Harris to a surgeon. Given the on-going physician-patient relationship between defendant and Mrs. Harris, which continued in the months immediately following, we cannot say as a matter of law that the duty of referral for evaluation and/or biopsy and/or treatment which defendant had after the D & C was performed was met by her referral some five (or even three) months before. We emphasize that here we are not discussing a duty which arose within days or weeks after the October 1969 referral. It may well be that a doctor who refers a patient to a surgeon for a biopsy has no duty of any kind to follow up the referral through either the patient or the surgeon. But such a proposition, stated in academic terms, cannot control disposition of the pending motion for summary judgment. The record shows a renewed if not an on-going relationship between Mrs. Harris and defendant, including hospitalization for a surgical procedure; more than that, giving plaintiff the benefit of the best reading of the record, (which we must do), defendant knew that the lump was still present and, moreover, that it was enlarged. Under these circumstances we cannot say that, as a matter of law, the referral some three to five months prior to the post-operative conference survived all that occurred thereafter and that, on unquestioned facts, defendant is entitled to judgment.

We conclude that there is a genuine dispute of a material issue of fact as to whether defendant was informed of the persistence and growth of the breast mass, and, for that reason, the Trial Court erred in *granting* summary judgment.

\* \* \* \* \* \*

Reversed and remanded.